IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GARY BENTLEY,                      )
                                   )
                Plaintiff,         )
                                   )
vs.                                )       Case No. 07-1364-MLB
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                Defendant.         )
_____ )


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On April 20, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 22-30).  Plaintiff alleged disability beginning September 13, 2005 (R. at 22).  Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 24).  At step one, the ALJ found that plaintiff did

4

not engage in substantial gainful activity since September 13, 2005, the alleged onset date (R. at 24). At step two, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease, history of cerebrovascular accident, coronary artery disease and diabetes (R. at 24). The ALJ further determined that plaintiff was overweight but not currently obese (R. at 24). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 24-25). After determining plaintiff's RFC (R. at 25), the ALJ found at step four that plaintiff was unable to perform past relevant work (R. at 29). At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

**III. Did the ALJ err at step two by not listing plaintiff's diabetic neuropathy as a severe impairment?**

At step two, the ALJ found that plaintiff's severe impairments included diabetes (R. at 24). The ALJ acknowledged the medical records of Dr. Rivera indicating that plaintiff had type II diabetes with neuropathy and a slight decreased sensation on the soles of the feet, and that he did not have significant diabetic neuropathy (R. at 27, 201, 200). The ALJ also noted that the consultative evaluation by Dr. Lewis found peripheral neuropathy in his hands and lower extremities bilaterally (R. at

5

27).[1]  However, the ALJ did not list diabetic neuropathy as a separate listed impairment.

First, the ALJ did list diabetes as a severe impairment, and further, the ALJ discussed the medical evidence regarding plaintiff's diabetic neuropathy.  The court finds no error simply because the ALJ failed to list as a severe impairment all of the complications or symptoms of diabetes after he had acknowledged that diabetes was a severe impairment.

Second, in the recent case of Brescia v. Astrue, 2008 WL 2662593 at *1-2 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In the case before the court (Bentley), the ALJ found plaintiff's diabetes to be a severe impairment, and the ALJ further considered the medical evidence relating to

---

[1]The report of Dr. Lewis noted diminished sensation in the right upper extremity from the mid forearm distal, in the left hand, and in both lower extremities from the knees distal.  Dr. Lewis found evidence of "extensive peripheral neuropathy" in his hands and lower extremities bilaterally (R. at 185).

plaintiff's diabetic neuropathy.  Therefore, the court finds that the ALJ did not commit reversible error by failing to list diabetic neuropathy separately as a severe impairment.

**IV.  Did the ALJ err by not ordering a consultative examination in regards to plaintiff's mental impairments?**

On August 18, 2005, Dr. Rivera indicated that plaintiff had "depressed mood, flat affect" (R. at 143).  On February 14, 2006, Dr. Rivera stated that plaintiff "has a very depressed mood and flat affect but denies suicidal ideations, hallucinations or delusions" (R. at 200).  On July 10, 2006, Dr. Rivera noted that plaintiff "has difficulty concentrating, and staying on task" (R. at 196).  Finally, at the hearing, plaintiff testified that she had problems with memory since the stroke (R. at 255).  Based on this evidence, plaintiff argues that the ALJ erred by not ordering a consultative examination regarding plaintiff's mental limitations.

The Commissioner has broad latitude in ordering consultative examinations.  Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim.  There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision

7

requiring further investigation.  The claimant has the burden to
make sure there is, in the record, evidence sufficient to suggest
a reasonable possibility that a severe impairment exists.  When
the claimant has satisfied this burden in that regard, it then
becomes the responsibility of the ALJ to order a consultative
examination if such an examination is necessary or helpful to
resolve the issue of impairment.  In a counseled case, the ALJ
may ordinarily require counsel to identify the issue or issues
requiring further development.  In the absence of such a request
by counsel, the court will not impose a duty on the ALJ to order
a consultative examination unless the need for one is clearly
established in the record.  Hawkins v. Chater, 113 F.3d 1162,
1166-1168 (10th Cir. 1997).

     As noted above, plaintiff has the burden to provide evidence
in the record sufficient to suggest a reasonable possibility that
a severe impairment exists.  The burden of proof at step two is
on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120
(10th Cir. 1993)(the claimant bears the burden of proof through
step four of the analysis).  A claimant's showing at step two
that he or she has a severe impairment has been described as "de
minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.
1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.
1988)("de minimis showing of medical severity").  A claimant need
only be able to show at this level that the impairment would have

more than a minimal effect on his or her ability to do basic work activities.[2]  Williams,844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a),

---

[2]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

§ 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

First, plaintiff has failed to present any medical evidence that plaintiff had mental impairments that had more than a minimal effect on his ability to engage in basic work activities for a continuous 12 month period.[3]  A couple of references in the treatment notes of depression, coupled with the absence of any objective medical findings regarding plaintiff's alleged depression, is clearly insufficient to trigger a consultative examination.  See Hawkins v. Chater, 113 F.3d at 1164-1165.  One isolated treatment note of difficulty concentrating and staying on task does not indicate an impairment impacting plaintiff's ability to work for a continuous 12 month period.  Plaintiff has therefore failed to present evidence sufficient to suggest a reasonable possibility that a severe impairment existed.

Second, when plaintiff is represented by counsel, as he was in this case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of a request by counsel for a consultative examination,

---

[3]Disability is the inability to do any substantial gainful activity because of a physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1515(a) (2008 at 357).

the court will not impose a duty on the ALJ to order one unless
the need for one is clearly established in the record.  Plaintiff
does not indicate that his counsel requested a consultative
mental examination, and no such request could be found in the
record.[4]  In the absence of a request for a consultative
examination, and in the absence of any showing that the need for
a consultative examination is clearly established in the record,
the court finds that the ALJ did not err by failing to order a
consultative mental examination.

**V.  Did the ALJ err in the weight accorded to the opinions of
plaintiff's treating physician, Dr. Brown?**

On March 12, 2007, Dr. Brown completed a medical statement
in which she opined that plaintiff can work 8 hours a day;
plaintiff can stand for 2 hours at a time; plaintiff can sit for
2 hours at a time; plaintiff can lift 20 pounds occasionally; and
plaintiff can lift 5 pounds frequently (R. at 214).  The ALJ
cited this opinion, and discounted plaintiff's credibility
because plaintiff's allegations were not consistent with the
opinions of Dr. Brown (R. at 28).  The ALJ also stated that Dr.
Brown's assessment was "consistent with the treatment notes" (R.
at 28).  However, in making his RFC findings, the ALJ found that

---

[4]Plaintiff's counsel did not request a consultative
examination at the hearing before the ALJ, and counsel's request
for review of the ALJ decision (R. at 10-12) does not raise this
issue or indicate that counsel had requested the ALJ to conduct a
consultative mental examination.

plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, relying on the state agency medical assessment (R. at 25, 28-29).  The ALJ offered no explanation for not adopting the following opinions of Dr. Brown: (1) plaintiff could only lift 5 pounds frequently, (2) plaintiff could stand for only 2 hours at one time, and (3) plaintiff could sit for only 2 hours at one time (R. at 214).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  The ALJ failed to comply with SSR 96-8p because he offered no explanation for not adopting the above limitations set forth by a treating physician.

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of

treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  However, the ALJ offered no explanation for not including in plaintiff's RFC the 3 limitations set forth above by plaintiff's treating physician.  The ALJ erred because of his failure to include these limitations in plaintiff's RFC absent a legally sufficient explanation for not including them.  Id.

In their brief, defendant set forth reasons for discounting the opinion of Dr. Brown that plaintiff could only lift 5 pounds frequently (Doc. 10 at 12).  However, the ALJ did not make this argument; in fact, the ALJ offered no explanation for not adopting this limitation in plaintiff's RFC.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not

13

apparent from the Commissioner's decision.  Grogan v. Barnhart,
399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or
evidentiary matters not considered by the ALJ, a court risks
violating the general rule against post hoc justification of
administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145
(10th Cir. 2004).

The difference in frequently lifting 10 pounds vs. 5 pounds
is an important difference.  The ALJ found that plaintiff can
perform light exertional work.  Light work is defined as follows:

> *Light work*. **Light work involves lifting no
> more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to
> 10 pounds**. Even though the weight lifted may
> be very little, a job is in this category
> when it requires a good deal of walking or
> standing, or when it involves sitting most of
> the time with some pushing and pulling of arm
> or leg controls. **To be considered capable of
> performing a full or wide range of light
> work, you must have the ability to do
> substantially all of these activities**. If
> someone can do light work, we determine that
> he or she can also do sedentary work, unless
> there are additional limiting factors such as
> loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b) (2008 at 392, emphasis added).  Thus, the
ability to perform the full range of light work requires the
ability to frequently lift 10 pounds.  The RFC presented to the
vocational expert (VE) indicated that plaintiff could do light
exertional work (20 pounds occasionally and 10 pounds frequently)
(R. at 264-265).  The VE identified 2 jobs (racker, marker) that

14

plaintiff could perform with a limitation of light exertional work, along with other limitations (R. at 265).  The VE also testified that "there would not be any sedentary work available because fingering, generally, that's sedentary" (R. at 265).  The RFC findings had limited plaintiff to no more than occasional fingering and feeling (R. at 25, 264).  Therefore, if plaintiff is in fact limited to frequently lifting and carrying only 5 pounds, it is not at all clear from the VE's testimony whether plaintiff can perform work which exists in significant numbers in the national economy.[5]

_____

[5]Plaintiff also points out that the job of marker identified by the VE requires frequent fingering, according to the Dictionary of Occupational Titles (DOT)(See SCO at 98).  However, the ALJ's RFC findings limited plaintiff to occasional fingering and feeling (R. at 25).  Thus, there is a conflict between the VE testimony and the DOT.  SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved.  2000 WL 1898704 at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on

Plaintiff's brief focused on the ALJ's failure to provide any explanation for not including the 5 pound limitation on frequent lifting opined by Dr. Brown (Doc. 7 at 10-14). Although plaintiff's brief mentioned Dr. Brown's opinion that plaintiff could stand for 2 hours at a time and sit for 2 hours at a time (Doc. 7 at 10), plaintiff did not specifically argue that the ALJ's failure to include these limitations was also error. However, because this case is being remanded because of the failure of the ALJ to either include Dr. Brown's opinion that plaintiff is limited to frequent lifting of 5 pounds, or offer a legally sufficient explanation for not including it, the ALJ, in order for this case to be decided in an expeditious manner, should also address the opinions of Dr. Brown that plaintiff can only stand for 2 hours at a time and sit for 2 hours at a time. These limitations are important for the reasons set forth below.

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work. On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full

_____

the DOT information.  2000 WL 1898704 at *2.  On remand, the ALJ must comply with SSR 00-4p.

16

range of unskilled sedentary work will be
eroded. The extent of the erosion will depend
on the facts in the case record, such as the
frequency of the need to alternate sitting
and standing and the length of time needed to
stand. **The RFC assessment must be specific as
to the frequency of the individual's need to
alternate sitting and standing.** It may be
especially useful in these situations to
consult a vocational resource in order to
determine whether the individual is able to
make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

SSR 83-12 discusses the use of the medical-vocational rules
as a framework for adjudicating claims in which an individual has
only exertional limitations within a range of work or between
ranges of work. One special situation covered in SSR 83-12 is
the need to alternate between sitting and standing. It states as
follows:

In some disability claims, the medical
facts lead to an assessment of RFC which is
compatible with the performance of either
sedentary or light work except that the
person must alternate periods of sitting and
standing. The individual may be able to sit
for a time, but must then get up and stand or
walk for awhile before returning to sitting.
Such an individual is not functionally
capable of doing either the prolonged sitting
contemplated in the definition of sedentary
work (and for the relatively few light jobs
which are performed primarily in a seated
position) or the prolonged standing or
walking contemplated for most light work.
(Persons who can adjust to any need to vary
sitting and standing by doing so at breaks,
lunch periods, etc., would still be able to
perform a defined range of work.)
There are some jobs in the national
economy--typically professional and

> managerial ones--in which a person can sit or
> stand with a degree of choice. If an
> individual had such a job and is still
> capable of performing it, or is capable of
> transferring work skills to such jobs, he or
> she would not be found disabled. However,
> most jobs have ongoing work processes which
> demand that a worker be in a certain place or
> posture for at least a certain length of time
> to accomplish a certain task. Unskilled types
> of jobs are particularly structured so that a
> person cannot ordinarily sit or stand at
> will.  In cases of unusual limitation of
> ability to sit or stand, a VS [vocational
> specialist] should be consulted to clarify
> the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow plaintiff brief changes of position (alternating sitting and standing).  The court stated as follows:

> Furthermore, if an ALJ finds that a claimant
> cannot perform the full range of work in a
> particular exertional category, an ALJ's
> description of his findings in his
> hypothetical and in his written decision must
> be particularly precise. For example,
> according to one of the agency's own rulings
> on sedentary labor, the description of an RFC
> in cases in which a claimant can perform less
> than the full range of work "must be specific
> as to the frequency of the individual's need
> to alternate sitting and standing." Social
> Security Ruling 96-9P, 1996 WL 374185
> (S.S.A.) at *7. **Precisely how long a claimant
> can sit without a change in position is also
> relevant to assumptions whether he can
> perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added).  The court then held

that the ALJ made a critical omission in his analysis by not properly defining how often the claimant would need to change positions.  84 Fed. Appx. at *5.

The court recognizes that it might be determined that Dr. Brown's opinion that plaintiff can stand for 2 hours at a time and sit for 2 hours at a time can be accommodated by scheduled breaks and a lunch.  However, the ALJ offered no explanation for not including these limitations in plaintiff's RFC, and the court will not make that determination in the first instance.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 30, 2008.


s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge